IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELLEN WATSON | : | CIVIL ACTION |
| | : | No. 05-3481 |
| v. | : | |
| | : | |
| METROPOLITAN LIFE INS. CO. | : | |
| | : | |
| O'NEILL, J. | : | JULY 11, 2007 |

## MEMORANDUM

Plaintiff Ellen Watson filed a complaint on July 7, 2005 under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., claiming that defendant Metropolitan Life Insurance Co. ("MetLife") wrongfully denied her long term disability benefits. Before me now are the parties' cross motions for summary judgment and defendant's response to plaintiff's motion.

## BACKGROUND

Watson was hired by Verizon on November 4, 1991 as a Maintenance Administrator in Verizon's Customer Service Department. In 2001, she began experiencing pain in her back and right leg that she associated with the need to care for her son who has cerebral palsy. An MRI of her spine in May 2002 showed right sided disc herniation compressing the right S/1 nerve root and also a shallow disc herniation at L/4, L/5 not compromising the central canal or neural foramen. She also was diagnosed with major depressive disorder by Dr. Misook Soh, Board Certified in psychiatry. Dr. Soh based his diagnosis on Watson's monthly therapy sessions, a GAF score of 55, and her family life. Since her diagnosis, Watson has been medicated with Zoloft, Webultrin and Trazodone.

1

On May 8, 2002, Watson stopped working, claiming that she was disabled due to thoracic lumbar disc displacement, major depressive disorder, thyroiditis, plantar fascitis, and heel spur. After fifty-two weeks, Watson became eligible to apply for long-term disability under the Verizon Long-Term Disability Benefit Plan for Mid-Atlantic Associates.  Verizon established the Plan to provide its eligible employees with disability benefit.  MetLife administers the benefits and claims under the Plan.  The Plan vests MetLife with complete discretionary authority to interpret the terms of the Plan and to determine eligibility for Plan benefits.

The Plan defines "Total Disability" as "unable, due to sickness or injury documented by objective medical evidence, to perform any job for which you are or may become qualified by reason of education, training, or experience, or any job that pays, on a full-time basis, 50 percent or more of your base pay."  The Plan also requires that a disabled individual "must be under the care of a qualified physician who must provide appropriate documentation of your disability." Further, to be considered disabled, "[y]ou must take proper care of yourself and receive medical treatment."

On March 30, 2003, MetLife acknowledged its receipt of plaintiff's claim for long-term disability benefits and requested forms and medical documentation by April 25, 2003.  When it did not receive the required information by May 7, 2003.  MetLife denied Watson's claim.

Watson then submitted some information.  MetLife initiated plaintiff's long-term disability benefits pending the conclusion of its investigation.[1]  As part of its initial review, MetLife considered various records, including Watson's job description, an MRI of the lumbar

---

[1]At one point in her motion, Watson argues that her claim for benefits was approved and then denied.  I disagree.  MetLife decided to pay plaintiff long-term disability benefits to avoid inconveniencing her while its disability determination was being made.

spine (5/20/02), an IME exam from (3/27/03), Watson's employee statement (4/03), her personal profile evaluation form (4/03), the attending physician statement by Dr. John Walsh (5/7/03), Behavioral Health Initial Functional Assessment Form by Dr. M. Soh (6/30/03 and 12/15/03), Lab work (6/30/03, 10/8/03, 10/20/03, and 12/8/03), Functional Capacity Evaluation Report (7/31/03), Letters to MetLife from Dr. John Walsh (8/14/03 and 12/15/03), Thyroid Image update (9/3/03), Thyroid B Scan (10/23/03), Letter to Dr. Walsh from Dr. Anne France Walczak, Endocrinology (10/25/03), Letter from Dr. Walsh from Dr. Urbas, Podiatry (12/14/03). Watson's claim was initially reviewed by a MetLife Case Manager, a Nurse Consultant, a Psychiatric Clinical Specialist and a Verizon Medical Doctor.

After completing its initial review of Watson's claim for benefits, MetLife notified her that her claim was denied because her medical information did not support and provide sufficient proof of total disability as defined by the Plan.  Specifically regarding Watson's mental health, MetLife advised her that the "information provided fails to support the presence of a psychiatric condition that would preclude [her] from performing her own job."  MetLife further found that the medical information provided to them did not support total disability, that there were no neurological findings or underlying lesions, that Watson had a sedentary work capacity and could perform her job with accommodations.  MetLife also noted that her thyroiditis was under control and her plantar facitis and heel spur were 90% improved.

On May 25, 2004, Watson advised MetLife that she was appealing the denial of her benefits.  MetLife's Appeal Unit referred plaintiff's file for review by two Independent Physician Consultants.  The Psychiatric Independent Physician Consultant reviewed Watson's file and found that the forms submitted by her psychiatrist "did not present a detailed mental status

3

examination." Further, he found that the forms did not specify why Watson's symptoms "would prevent [her] from working at her own occupation." The other Independent Physician Consultant also found that the file lacked objective medical evidence to support a physical functional impairment. Reviewing the Functional Capacity Evaluation ("FCE"), he found that it "substantiates that [Watson] should be able to return to a sedentary activity with a gradual return to full time work. Remaining out of work has hindered her return to productivity and would seem to be inhibiting her psychological well-being."

On July 8, 2004, MetLife advised Watson that it was not changing its decision to deny benefits. It advised Watson that the "medical documentation on file does not provide physical or psychological evidence that [she] was precluded from performing the duties of her own job." Plaintiff requested a second level appeal but did not submit any additional information or medical documentation for review. MetLife referred plaintiff's request for a second level appeal to the Verizon Claims Review Committee.

The Committee referred plaintiff's file for review to Ruksana Sadiqali, M.D., of Verizon Occupational Health Services. Dr. Sadiqali recommended an additional FCE based on his belief that MetLife had approved, then denied long-term benefits to Watson. Following Watson's second FCE, performed on January 27, 2005, the Verizon Claims Review Committee advised Watson's counsel that her request for long-term disability benefits was being denied. The Committee advised plaintiff's counsel that the information provided did not substantiate Watson's request for reinstatement of her long-term disability benefits. It also advised plaintiff's counsel that its decision was final and advised plaintiff of her rights under ERISA.

Watson was awarded Social Security Disability benefits in November 2002. Dr. Alan

4

Groth of the Pennsylvania Bureau of Disability Determination, after a physical examination and in-person consultation, declared that Watson was suffering from severe depression, chronic low back pain, trigeminal neuraglia and mitral valve prolapse.  The State Social Security Administration found Watson to be totally disabled from any occupation for which she was qualified.  These records do not appear in MetLife's Administrative Record.

STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions . . . which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  After the moving party has filed a properly supported motion, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

I must determine whether any genuine issue of material fact exists.  An issue is genuine if the fact finder could reasonably return a verdict in favor of the non-moving party with respect to that issue.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is material only if the dispute over the facts "might affect the outcome of the suit under the governing law."  Id. In making this determination, I must view the facts in the light most favorable to the non-moving party, and the non-moving party is entitled to all reasonable inferences drawn from those facts.

Id.  However, the nonmoving party may not rest upon the mere allegations or denials of the party's pleading.  See Celotex, 477 U.S. at 324.  The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989).  If the evidence for the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249-50 (citations omitted).

Cross-motions are merely claims by each side that it alone is entitled to summary judgment; they do not constitute an agreement that if one is denied the other is necessarily granted or that the losing party waives judicial consideration and determination of whether genuine issues of material fact exist.  Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968).  If any such issue exists it must be disposed of at trial and not on summary judgment.  Id. In the present case, there are no genuine issues of material fact.  Both parties agree on the relevant facts and refer to the same standardized record.[2]  The only issue before me is whether as a matter of law MetLife's decision to deny Watson long term disability benefits was arbitrary and capricious.  I hold that it was not.

---

[2]When reviewing an administrator's determination, courts may only review the evidence that was before the administrator at the time of its determination.  Mitchell v. Eastman Kodak Co., 113 F.3d 433, 440 (3d Cir. 1997).  Watson attempts to supplement the record with her Social Security documents, including her examination by Dr. Groth, but admits that MetLife did not have copies of those documents when it denied her long-term disability benefits.  Therefore, I cannot consider them.

DISCUSSION

A.      ERISA Standard of Review

Where the administrator of a long term disability plan has discretion to interpret the plan

and determine whether benefits are available to an injured employee, the administrator's exercise

of discretion is judged by an arbitrary and capricious standard.  See Firestone Tire & Rubber Co.

v. Bruch, 489 U.S. 101, 115 (1989); Abnathya v. Hoffman-LaRoche, Inc., 2 F.3d 40, 45 (3d Cir.

1993).  "Under the arbitrary and capricious standard, an administrator's decision will only be

overturned if it is without reason, unsupported by substantial evidence or erroneous as a matter of

law."  Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 387 (3d Cir. 2000).  I am not free

to substitute my own judgment for that of an administrator absent such a showing.  Id

B.      Diagnoses of Treating Physicians

Watson argues that MetLife's decision to deny her long-term benefits was arbitrary and

capricious because it gave little to no consideration to the diagnoses of her treating physicians.

Although in some cases "opinions of a claimant's treating physician[s] are entitled to substantial

and at times even controlling weight," Skretvedt v. E.I. DuPont de Nemours & Co., 268 F.3d

167, 187 (3d Cir. 2001), quoting Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001), "plan

administrators are not obliged to accord special deference to the opinions of treating physicians"

because there is also bias and conflict of interest on the part of "a treating physician who, in a

close case, may favor a finding for the patient."  Stratton v. E.I. Dupont De Nemours & Co., 363

F.3d 250, 258 (3d Cir. 2004), citing Black & Decker Disability Plan v. Nord, 538 U.S. 822

(2003).  As the Supreme Court stated in Black & Decker:

Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable

7

evidence, including the opinions of a treating physician. But, we hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.

538 U.S. at 823-24. MetLife's administrators throughly reviewed the opinions of Watson's treating physicians and addressed both their subjective findings and the accompanying objective evidence. Thus, the fact that MetLife accorded greater weight to its reviewing physicians than to Watson's treating physicians does not make its decision to deny plaintiff's long-term disability benefits arbitrary and capricious.

C.      Social Security Evidence

Watson also argues that MetLife ignored her Social Security evidence. A plan administrator need not defer to a SSA decision when determining whether a claimant qualifies for disability benefits. Dorsey v. Provident Life & Accident Ins. Co., 167 F. Supp. 2d 846, 856 n.11 (E.D. Pa. 2001). An SSA decision is merely one factor that may be considered; it is not dispositive in determining whether an ERISA administrator's decision is arbitrary and capricious. Id. As I discussed above, the plan administrator reviewed and assessed the medical evidence provided by Watson. Watson admits that she did not provide the Social Security documents to MetLife at the time of its decision to deny Watson long-term disability benefits. Therefore, because the Social Security documents were not part of the record provided by Watson and reviewed by MetLife, the administrator's decision not to review them cannot be arbitrary and capricious.

D.      Interpretation of FCEs

Watson also argues that MetLife's interpretation of her first FCE was questionable and

8

that MetLife entirely ignored her second favorable FCE.  According to Watson, MetLife failed to give any consideration of the FCE performed on January 27, 2005.  MetLife, however, did consider the second FCE.  In their letter dated March 14, 2005, the Verizon Claims Review Committee notified Watson that Ms. Laina Curran, MSPT, reviewed the FCE and found that "based on individual tolerances for Sitting (Frequently), Standing (Occasionally) and Walking (Frequently), it appears clinically reasonable that [plaintiff] can tolerate sedentary work for the 8 hour day."  Contrary to Watson's arguments, the second FCE was not favorable to her–it only supported MetLife's decision that she was able to perform her job with accommodations. Further, the second FCE was ordered only because the Verizon Claims Review Committee erroneously believed that MetLife had approved and then later denied Watson's disability benefits.  Therefore, I cannot say that MetLife's decision to deny Watson's long term disability benefits was arbitrary and capricious based on MetLife's interpretation of the first FCE or their failure to consider Watson's second FCE.

E.    Review of MetLife's Determination

There is ample evidence to support MetLife's decision not to award long-term disability benefits to Watson.  MetLife carefully reviewed Watson's medical records at each stage of her appeals process.  It also thoroughly addressed the subjective opinions of her treating doctors and the objective medical evidence in her file.  When the administrator has reviewed all the evidence and there is no indication of a conflict of interest I cannot substitute my judgment for the judgment of the plan administrator.  Therefore, I find that MetLife's decision to deny Watson long-term disability benefits was not arbitrary and capricious.

An appropriate Order follows.

9

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ELLEN WATSON                              :          CIVIL ACTION
                                          :          No. 05-3481
        v.                                :
                                          :
METROPOLITAN LIFE INSURANCE CO.           :

ORDER

        And now, this 11th day of July, 2007, upon consideration of defendant MetLife's motion

for summary judgment, plaintiff Watson's motion for summary judgment and defendant's

response thereto, and for the reasons set forth in the accompanying memorandum, defendant's

motion for summary judgment is GRANTED.  Plaintiff's motion for summary judgment is

DENIED.  Judgment is entered in favor of defendant Metropolitan Life Insurance Co. and against

plaintiff Ellen Watson.

        Defendant's motion to Strike Plaintiff's Supplemental Administrative Record is DENIED

as moot.

        The clerk is ordered to close this case statistically.




                                          s/Thomas N. O'Neill, Jr.
                                          THOMAS N. O'NEILL, JR., J.